IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> LYNVAL KERRIS ANDERSON, JR., <br><br> Defendant. | Case No. 2:98-cr-143 |

**MEMORANDUM OPINION & ORDER**

This matter comes before the Court on the defendant's Motion for Compassionate Release. ECF No. 146. The motion argues that "extraordinary and compelling reasons" exist to reduce the defendant's sentence based on the COVID-19 pandemic and the defendant's "particular vulnerability" to serious illness. *Id.* at 1–2. This matter is now ripe for disposition. The Court has fully considered the arguments set forth in the parties' briefs and has determined it is not necessary to hold a hearing on the motion. For the reasons stated below, the motion is **DENIED**.

I.   **PROCEDURAL HISTORY**

The defendant, Lynval Kerris Anderson, Jr., was charged on September 15, 1998, with Conspiracy to Distribute and Possession with Intent to Distribute Cocaine Base and Cocaine, and Carrying a Firearm During and in Relation to a Drug Trafficking Crime. A superseding indictment was returned on November 19, 1998, that charged the defendant with Conspiracy to Possess and to Distribute Cocaine, Continuing Criminal Conspiracy, Distribution and Possession with Intent to Distribute Cocaine, Distribution and Possession with Intent to Distribute Cocaine,

Carrying a Firearm in Relation to Drug Trafficking, and Possession of a Firearm by a Convicted Felon. The defendant pleaded guilty on March 25, 1999, to one count of Continuing Criminal Enterprise.

According to the Compassionate Release Presentence Investigation Report, the defendant was one of several participants in a conspiracy to distribute cocaine that began in 1989. ECF No. 148 at 5–6 (SEALED). The defendant's involvement began in August 1992 and continued even after his arrest on July 31, 1998, when he continued participating in the conspiracy from jail. *Id.* at 18. At the time he was sentenced, 6.8 kilograms of powder cocaine and 38.81 kilograms of crack cocaine were attributed to him. *Id.* at 19. He possessed a number of firearms during the course of the conspiracy and was involved in several shootouts. *Id.* at 18–19.

Based on his criminal history and the facts surrounding his conviction, the defendant's sentencing guidelines range was 360 months to life. *Id.* at 34. The defendant was sentenced to 480 months imprisonment and five years of supervised release.[1] ECF No. 42. The defendant is due to be released from prison in 2032.

The defendant filed the instant motion on April 17, 2020. ECF No. 146. The Honorable Henry C. Morgan, Jr., to whom this case was previously assigned, ordered the government to respond on May 12, 2020. ECF No. 147. The government filed a response in opposition on May 27, 2020. ECF No. 150. The defendant filed a reply on June 1, 2020. ECF No. 151. The defendant filed a motion to include additional

---

[1] The statute under which the defendant was convicted, 21 U.S.C. § 848, carries a mandatory minimum sentence of 20 years. *See* 21 U.S.C. § 848(a).

2

exhibits in support of the instant motion on April 11, 2022. ECF No. 162. This case was reassigned to this Court on March 17, 2023. The Court granted the defendant's motion to include additional exhibits on April 25, 2023. ECF No. 163.

## II.   LEGAL STANDARDS

### A.   Exhaustion

Before the court may consider a motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must exhaust their administrative rights to appeal the Bureau of Prisons' failure to bring a motion on the defendant's behalf. 18 U.S.C. § 3582(c)(1)(A). Alternatively, once 30 days have passed after the defendant has requested relief from the warden of their facility, the defendant may file a motion with the court as though they had exhausted their administrative remedies. *Id.*; *see United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) (clarifying that defendants may satisfy the exhaustion requirement by waiting 30 days from the date of their initial request to file a motion in the district court, even if the warden has already responded to their request). The exhaustion requirement "is a non-jurisdictional claim-processing rule" and therefore "may be waived or forfeited." *Id.* at 130.

### B.   Merits

A court may modify a term of imprisonment under 18 U.S.C. § 3582(c)(1)(A)(i) if, after considering the sentencing factors in 18 U.S.C § 3553(a), it finds that "extraordinary and compelling reasons warrant such a reduction." *See United States*

3

*v. Hargrove*, 30 F.4th 189, 197–98 (4th Cir. 2022). The overarching purpose of the compassionate release mechanism guides district courts' consideration:

> When Congress authorized district courts, as a matter of discretion, to release an inmate from prison based on extraordinary and compelling reasons, it did so to introduce compassion as a factor in assessing ongoing terms of imprisonment, authorizing a district court to give greater weight to an inmate's personal circumstances — when sufficiently extraordinary and compelling — than to society's interests in the defendant's continued incarceration and the finality of judgments. Thus, motions for relief under § 3582(c)(1)(A)(i) ask courts to balance the severity of the inmate's personal circumstances, on the one hand, against the needs for incarceration, on the other.

*Id.* at 197. Courts in this district have generally considered the defendant's arguments regarding extraordinary and compelling reasons for sentence reduction first, then balanced the outcome of that analysis against the sentencing factors in section 3553. *E.g.*, *United States v. Ogun*, No. 4:12cr4, 2023 WL 2207114, at *1 (E.D. Va. Feb. 24, 2023).

### 1. *Extraordinary and compelling reasons*

The Court may reduce a prisoner's sentence under § 3582(c)(1)(A)(i) if it finds "extraordinary and compelling reasons" to do so. The prisoner bears the burden of demonstrating such reasons. *See Hargrove*, 30 F.4th at 195.

The Sentencing Commission has promulgated a policy statement, United States Sentencing Guideline § 1B1.13, which attempts to define what may constitute "extraordinary and compelling reasons." *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020). This policy statement was last updated before the First Step Act was signed into law, *i.e.*, when only the Bureau of Prisons could bring compassionate

4

release motions. *Id.* As a result, the Fourth Circuit has held that the policy statement is not binding but can serve as "helpful guidance" when evaluating compassionate release motions filed by prisoners. *Hargrove*, 30 F.4th at 197 (quoting *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021)). The policy statement provides that extraordinary and compelling reasons exist, in the medical/health context, where:

> The defendant is suffering from a terminal illness. . . . serious physical or medical condition . . . serious functional or cognitive impairment . . . [or] deteriorating physical or mental health because of the aging process . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n. 1 at (A)(i), or where

> "The defendant (I) is at least 65 years old; (II) is experiencing a serious deterioration in physical or mental health because of the aging process; and (III) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."

*Id.* at (A)(ii). A "district court's analysis must examine whether the defendant's request for reduction is consistent with the Sentencing Commission's applicable policy statements." *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023).

Although the Fourth Circuit has not, in a published opinion, definitively set forth the standard for courts to use when evaluating compassionate release motions based on COVID-19, the court has stated that the "inmate must show at least 'that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that the inmate's preexisting medical condition increases that individual's risk of experiencing a serious, or even fatal, case of COVID-19.'" *United States v. Steward*,

5

No. 22-6403, 2022 WL 16948600, at *1 (4th Cir. Nov. 15, 2022) (unpublished) (quoting *High*, 997 F.3d at 185).

The prevailing standard applied by courts in this district and elsewhere in the Fourth Circuit is that the prisoner must show "both a particularized susceptibility to the disease *and* a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (emphasis added); *see also, e.g.*, *Hargrove*, 30 F.4th at 196 (affirming a district court order denying relief after applying this standard); *United States v. Adamson*, 831 F. App'x 82, 83 (4th Cir. 2020) (unpublished) (same).

### 2. *Sentencing factors*

After completing the "extraordinary and compelling reasons" analysis, the Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a). *United States v. Nurani*, No. 2:11cr34, 2023 WL 2058649, at *1 (E.D. Va. Feb. 16, 2023). Even if the Court finds "extraordinary and compelling reasons" to reduce a defendant's sentence, the Court may ultimately deny a motion for compassionate release if its analysis of the § 3553(a) factors counsels against release. *Id.* Those factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;

6

>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established [by the Sentencing Commission];
>
> (5) any pertinent policy statement [issued by the Sentencing Commission] [that is in effect on the date the defendant is sentenced except as provided in section 3742(g)];
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

## III. ANALYSIS

### A. Exhaustion

The defendant filed an administrative request with the warden of his facility on April 16, 2020. *See* ECF No. 150-1. The warden denied the defendant's request on April 23, 2020. ECF No. 150-2. The defendant filed the instant motion on April 17, 2020—one day after he filed his request and approximately one week before the warden responded to it. ECF No. 146. The defendant did not appeal the warden's denial of his administrative request.

The government concedes that the defendant has met the exhaustion requirement because he filed the instant petition more than thirty days since he filed his request with the warden. ECF No. 150 at 12–13. The Court agrees that the defendant has met the exhaustion requirement. *See* 18 U.S.C. § 3582(c)(1)(A); *see also*

7

*Muhammad*, 16 F.4th at 131. Although the defendant filed the instant motion less than 30 days after he filed his administrative request—and prior to receiving a decision from the warden on that request—it has now been more than 30 days since the administrative request was filed. Moreover, the Fourth Circuit held in *Muhammad* that the exhaustion requirement contained in section 3582(c)(1)(A) "may be waived or forfeited." *Id.* at 130. Here, the government concedes that "[t]he defendant arguably satisfies the statute's 30-day requirement since . . . it has not been more than '30 days from the receipt of such a request by the warden of the defendant's facility.'" ECF No. 150 at 13 (quoting 18 U.S.C. § 3582(c)(1)(A)). Accordingly, the Court finds that the exhaustion requirement has been satisfied.

### B. Merits

#### 1. *Extraordinary and compelling reasons*

The defendant must show "both a particularized susceptibility to the disease *and* a particularized risk of contracting the disease at his prison facility." *Feiling*, 453 F. Supp. 3d at 841 (emphasis added). The defendant argues that he is particularly susceptible to getting seriously ill from COVID-19 because (1) he is 55 years old[2], (2) he is a Black male, and (3) he has hypertension. ECF No. 146 at 2–3. The Court finds that the defendant has failed to show that he is particularly susceptible to serious illness from COVID-19.

With respect to the defendant's age, the CDC has stated that individuals older than 50 years of age are "more likely than young people to get very sick if they get

---

[2] The defendant filed the instant motion on April 17, 2020, when he was 52 years old.

8

COVID-19," and that the risk increases with older age.[3] At 55 years old, the defendant falls into this range of increased risk. But the CDC also instructs that individuals older than 65 are at the greatest risk of death from COVID-19.[4] *See also, e.g., United States v. Stafford*, No. 16cr336, 2020 WL 3893401, at *2 (D. Md. July 10, 2020) ("[A]t 60 years old, Stafford is not in the highest risk age-group.").

While it is true that "people from racial and ethnic minority groups" are at increased risk of serious illness and death from COVID-19,[5] "most courts have decided that race, qua race, is not an extraordinary and compelling reason for compassionate release," *United States v. Jackson*, No. 3:16cr6, 2022 WL 1178513, at *3 (E.D. Va. Apr. 20, 2022). As the CDC has noted, the increased risk that has been observed in racial minority groups is the product of "[p]ersistent health disparities combined with historic housing patterns, work circumstances, and other factors."[6] In other words, "current evidence suggests a correlation, not causation." *United States v. Dimkpa*, No. 1:19-cr-443, 2020 WL 4754901, at *2 (M.D.N.C. Aug. 17, 2020). There is no evidence in the record that the defendant is unable to access medical care at FCI Oakdale.

---

[3] *See* CDC, *Factors that Affect Your Risk of Getting Very Sick from COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/your-health/risks-getting-very-sick.html (last accessed June 8, 2023).
[4] CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed June 8, 2023).
[5] *See supra* note 4.
[6] CDC, *CDC COVID-19 Response Health Equity Strategy*, https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/cdc-strategy.html (last accessed June 8, 2023)

It is also true that people who are assigned male at birth are more likely to die from COVID-19 than those who are assigned female. *United States v. Freeman*, 617 F. Supp. 3d 386, 394 (E.D. Va. 2022). However, as with race, there is no evidence to suggest that there is a causal link between sex and COVID-19 susceptibility. *United States v. Guest*, No. 16-cr-499, 2022 WL 2104492, at *15 (D. Md. June 9, 2022) ("[A] defendant's status as a minority male does not itself constitute a risk factor for COVID-19 in the same [way] that an underlying medical condition does.") (quotation marks omitted, modifications accepted). Thus, although the Court recognizes that the defendant's sex places him at a "slightly higher statistical risk" of contracting serious illness from COVID-19, courts have declined to find that a defendant's sex warrants relief. *United States v. Spencer*, No. 7:18-cr-853, 2021 WL 2309979, at *3 (D.S.C. June 7, 2021).

According to the most recent guidance from the Centers for Disease Control ("CDC"), "[h]aving heart conditions such as heart failure, coronary artery disease, cardiomyopathies, and *possibly* high blood pressure (hypertension) *can* make you more likely to get very sick from COVID-19;[7] however, the speculative nature of the causal connection between hypertension and serious illness from COVID-19 falls short of establishing a particularized susceptibility. Although each case must be assessed on its own merits, other courts have similarly rejected motions for compassionate release that assert an increased risk of serious illness from COVID-19 based on high blood pressure. *See United States v. Hargrove*, 30 F.4th 189, 195 (4th

---

[7] *See supra* note 5.

10

Cir. 2022); *United States v. Shimek*, No. 4:20-cr-54, 2023 WL 2479609 (E.D. Va. Mar 13, 2023).

Taken together, the defendant's asserted health conditions and demographic factors—including his hypertension, sex, race, and age—do not pose a particularized risk of serious illness from COVID-19 such that relief is warranted.

This conclusion is consistent with the Sentencing Commission's guidance. The defendant is not "suffering from a terminal illness," he does not have a "serious physical or medical condition" or "serious functional or cognitive impairment," and his "physical or mental health" is not "deteriorating . . . because of the aging process." U.S.S.G. § 1B1.13 cmt. n. 1 at (A)(i). Nor is the defendant "at least 65 years old" or "experiencing a serious deterioration in physical or mental health because of the aging process." *Id.* at (A)(ii). These factors, though not dispositive, counsel against issuing relief.

The defendant also argues that he is at a particularized risk of contracting the disease at his prison facility, FCI Oakdale. *Id.* at 3–6. As of June 8, 2023, the facility is operating at Level 1 Operations, meaning that the "[m]edical isolation rate" is less than 2 percent and that there have been fewer than 100 positive cases per 100,000 inmates over the last seven days.[8] There are currently no active cases of COVID-19

---

[8] *See* BOP, *FCI Oakdale I*, https://www.bop.gov/locations/institutions/oak (last accessed June 8, 2023); BOP, *COVID-19 Modified Operations Plan & Matrix*, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last accessed June 8, 2023).

11

among inmates or staff.[9] In addition, 237 staff and 2252 inmates have been vaccinated against COVID-19.[10] These facts demonstrate that the defendant does not have a particularized risk of contracting COVID-19 at his facility.

For the reasons stated above, the defendant has failed to demonstrate that there are extraordinary and compelling reasons that warrant compassionate release.

### 2. *Sentencing factors*

Even if the defendant had demonstrated extraordinary and compelling reasons such that compassionate release might be warranted, the factors enumerated in 18 U.S.C. § 3553(a), when viewed in light of the health and circumstances of the defendant as discussed above, counsel against issuing relief.

The "nature and circumstances of the offense" for which the defendant was convicted are serious. The defendant was engaged in a large, multi-state conspiracy to distribute cocaine for at least six years. ECF No. 148 at 5–18 (SEALED). During the course of that conspiracy, the defendant frequently carried a firearm and was involved in several shootouts. *Id.* at 18–19. Given the underlying criminal conduct, there is a need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). This is especially so given that the defendant continued to participate in the conspiracy after he was imprisoned, by "instructing co-conspirators to collect

---

[9] BOP, *BOP COVID-19 Statistics*, https://www.bop.gov/coronavirus/covid19_statistics.html (last accessed June 8, 2023).
[10] *Supra* note 9.

drug debts for him, to sell his assets, and to move his vehicles." ECF No. 148 at 17 (SEALED).

The "kinds of sentences available" and the "sentencing range" also counsel against granting compassionate relief. The charge to which the defendant pleaded guilty, Engaging in a Continuing Criminal Enterprise, carries a mandatory minimum sentence of 20 years and a maximum sentence of life in prison. 21 U.S.C. § 848(a). Due to the defendant's particular characteristics and criminal history, his guidelines range was calculated to be 360 months to life in prison. ECF No. 148 at 34 (SEALED). Judge Morgan, to whom this case was previously assigned, sentenced the defendant to 480 months imprisonment. ECF No. 42. Releasing the defendant now, as he has requested, would result in him serving just over 60 percent of the sentence imposed, which is well below the bottom end of the guidelines range.[11] *United States v. Kibble*, 992 F.3d 326, 331 (4th Cir. 2021) (district courts are "entitled to consider the amount of time [the defendant] already had served as one factor in the § 3553(a) analysis."). Given the nature of his conduct, alternative sentences such as home confinement or supervised release would not "reflect the seriousness of the offense, . . . promote respect for the law, . . . [or] provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). *Freeman*, 617 F. Supp. 3d at 400.

---

[11] The drug weight attributable to the defendant is so large that, despite the changes that have been made to the sentencing guidelines for cocaine offenses since the time the defendant was originally sentenced, the applicable guidelines range has remained the same.

13

Finally, the Court has considered the "history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The defendant's son filed a letter in support of his motion, indicating that "[d]uring his time in federal prison, [the defendant has] taken numerous courses for a better way of life and living." ECF No. 162–61 at 1. This is supported by the defendant's prison records, which indicate that the defendant has taken a substantial number of educational courses while he has been incarcerated. *See* ECF No. 150–53. The defendant's fiancé also filed a letter, stating that "[h]e has learned trades and skills that will be vital and valuable to his re-assimilation into society, and has work[ed] towards repairing relationships and bonds with his children and remaining family members." ECF No. 162–62 at 1. Both letters indicate that the defendant has maintained efforts to remain connected to his family despite his incarceration.

The defendant's efforts to further his education and to remain connected to his family despite his incarceration are indeed commendable. And although his conduct in prison early in his sentence included serious disciplinary issues, *see* ECF No. 150–4, his behavioral record has largely been clean for approximately 18 years. Moreover, as the defendant points out, the statistical likelihood that a defendant who has a minimal criminal history and who is over the age of 50 will recidivate is relatively low. ECF No. 151 at 6–7. These facts weigh in favor of reducing the defendant's

14

sentence.[12] Nonetheless, when the other § 3553(a) factors discussed above are taken into account, a sentence reduction is not warranted.

In sum, the Court concludes that the sentence currently imposed is "sufficient, but not greater than necessary" and that the factors enumerated in § 3553(a) counsel against reducing the defendant's sentence.

## IV. CONCLUSION

For the foregoing reasons, the defendant's motion for compassionate release (ECF No. 146) is **DENIED**.

The Clerk is **DIRECTED** to forward copies of this Order to all counsel of record.

**IT IS SO ORDERED.**

/s/

Jamar K. Walker
United States District Judge

Norfolk, Virginia
June 8, 2023

---

[12] The Sentencing Commission's guidance advises that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason." U.S.S.G. § 1B1.13