UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA

v.                                                    Criminal No. 2:98cr143

LYNVAL KERRIS ANDERSON JR.,

      Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant Lynval Kerris Anderson Jr.'s ("Defendant") second motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 167. The Court has fully considered the arguments set forth in the parties' briefs and has determined it is not necessary to hold a hearing on the motion. For the reasons discussed below, Defendant's motion for compassionate release is **DENIED**.

### I. BACKGROUND

In August of 1992, Defendant became involved in a conspiracy to distribute cocaine and "crack" cocaine. ECF No. 166 ¶ 10. During his participation in the conspiracy, Defendant sold drugs, possessed firearms, and was involved in several shootouts. Id. ¶¶ 10-89. This criminal conduct culminated in Defendant being charged in a multi-defendant, multi-count indictment filed in November of 1998. ECF No. 11. Even after his arrest and subsequent incarceration resulting from this indictment, Defendant continued

his participation in the conspiracy.    ECF No. 166 ¶ 85.
Ultimately, Defendant pled guilty to Count Two of the indictment:
Engaging in a Continuing Criminal Enterprise, in violation of 21
U.S.C. § 848.    ECF No. 38.    Defendant faced a Guideline range of
360 months to life imprisonment, ECF No. 166 ¶ 163, and in 1999
another judge of this Court sentenced Defendant to 480 months'
imprisonment, ECF No. 42.

Defendant has sought a sentence reduction through multiple
avenues during his past two decades of incarceration.    Defendant
filed a Motion to Reduce his sentence under the First Step Act on
April 2, 2020.    ECF No. 144.    Shortly thereafter, on April 17,
2020, Defendant filed his first motion for compassionate release.
ECF No. 146.    After full briefing, both motions were denied.    ECF
Nos. 164, 165.

On February 13, 2024, Defendant filed the instant motion for
compassionate release.    ECF No. 167.    The Government filed a
response, ECF No. 169, and Defendant replied, ECF No. 173.    Then,
Defendant requested and was granted leave to file a supplemental
pleading, which was filed on February 3, 2025.    ECF Nos. 174, 176.
The Government again responded, ECF No. 178, and on March 24, 2025,
this case was reassigned to the undersigned judge, ECF No. 179.
Defendant's motion is now ripe for decision.

## II. LEGAL STANDARD

A sentencing court generally lacks the authority to "modify a term of imprisonment once it has been imposed." United States v. Davis, 99 F.4th 647, 653 (4th Cir. 2024) (quoting 18 U.S.C. § 3582(c)). The compassionate release statute is a limited exception to this default position, providing the Court with discretionary authority to reduce a federal inmate's sentence if "extraordinary and compelling reasons warrant such a reduction." Id. (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

Section 3582(c)(1)(A) does not define "extraordinary and compelling," but relies instead on a cross-reference to "policy statements" issued by the United States Sentencing Commission. See United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021). In 2023, the Sentencing Commission issued an amended policy statement setting forth a non-exhaustive list of circumstances which may individually or in combination create extraordinary and compelling reasons for a sentence reduction. See U.S.S.G. § 1B1.13. In certain circumstances, unusually long sentences can qualify as an extraordinary and compelling reason to justify a sentence reduction, as can "other reasons." Id. The pertinent part of the Guideline policy statement provides:

> **Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)**
>
> (b) Extraordinary    and    Compelling    Reasons.—
> Extraordinary and compelling reasons exist under

3

any of the following circumstances or a combination
thereof:

(1) Medical Circumstances of the Defendant . . .

(2) Age of the Defendant . . .

(3) Family Circumstances of the Defendant . . .

(4) Victim of Abuse [while in custody] . . .

(5) Other Reasons — The defendant presents any other
circumstance or combination of circumstances that,
when considered by themselves or together with any
of the reasons described in paragraphs (1)
through (4), are similar in gravity to those
described in paragraphs (1) through (4).

(6) Unusually Long Sentence — If a defendant received
an unusually long sentence and has served at least
10 years of the term of imprisonment, a change in
the law (other than an amendment to the Guidelines
Manual that has not been made retroactive) may be
considered in determining whether the defendant
presents an extraordinary and compelling reason,
but only where such change would produce a gross
disparity between the sentence being served and the
sentence likely to be imposed at the time the motion
is filed, and after full consideration of the
defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b).[1]

Unlike the other factors listed in § 1B1.13(b) that can
constitute an extraordinary and compelling reason for a sentence
reduction, rehabilitation "is not, by itself, an extraordinary and
compelling reason for purposes of th[e] policy statement."
U.S.S.G. § 1B1.13(d). However, rehabilitation "may be considered

---

[1] This new standard was not in force when Defendant filed his first
compassionate release motion in 2020, nor when the motion was denied.

in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." Id.

A defendant seeking compassionate release bears the burden of demonstrating "extraordinary and compelling" circumstances. United States v. Melvin, No. 23-6011, 2023 WL 5974872, at *2 (4th Cir. Sept. 14, 2023). If a defendant meets their burden and establishes that extraordinary and compelling circumstances exist, the Court must then consider the statutory sentencing factors set forth in 18 U.S.C. § 3553(a) to determine how much of a reduction (if any) is appropriate. United States v. Bethea, 54 F.4th 826, 831 (4th Cir. 2022). While some of the § 3553(a) factors may also be relevant to the extraordinary and compelling inquiry, the Court "must conduct a two-step analysis" before granting relief. United States v. Centeno-Morales, 90 F.4th 274, 279 (4th Cir. 2024).

### III. DISCUSSION

Defendant advances four arguments in support of his claim that extraordinary and compelling circumstances are present: (1) his sentence is unusually long and grossly disproportionate to the sentence he would receive today; (2) various legislative and executive branch actions evidence the federal government's recognition of a longstanding unjust sentencing disparity between powder cocaine and crack cocaine offenses; (3) the COVID-19 pandemic made his sentence harsher and more punitive than

5

originally contemplated; and (4) he has undergone extensive and impressive rehabilitation.

### A. Unusually Long Sentence

Defendant asserts that he was "charged, convicted, and sentenced [] pursuant to a federal sentencing scheme that 'undermined [] various congressional objectives.'" ECF No. 167, at 7 (quoting U.S. Sentencing Commission, Report to Congress: Cocaine and Federal Sentencing Policy 8 (2007)). Defendant states that since his sentencing in 1999, Congress has acknowledged that it "erred in requiring the imposition of such harsh punishments on defendants – particularly minority defendants – convicted of crack cocaine offenses" through passing both the First Step Act and the Fair Sentencing Act, and therefore he is currently serving an "unusually long sentence" that results in an "unwarranted disparity." Id. at 5-8.

As determined by the Sentencing Commission, an "unusually long sentence" can be an extraordinary and compelling circumstance justifying compassionate release. U.S.S.G. § 1B1.13(b)(6). A defendant is eligible for a sentence reduction under § 1B1.13(b)(6) if able to demonstrate all of the following: "(1) the defendant received an 'unusually long sentence;' (2) a change in the law has produced a 'gross disparity between the sentence being served and the sentence likely to be imposed' at the time of the motion's filing; (3) the defendant has 'served at least ten years of the

term of imprisonment;' and (4) 'full consideration of the defendant's individualized circumstances' support a finding of extraordinary and compelling circumstances." United States v. Cruse, No. 3:12cr146, 2024 WL 3257142, at *3 (W.D.N.C. July 1, 2024) (quoting U.S.S.G. § 1B1.13 (b)(6)).

Because Defendant has served more than 10 years of his federal term of imprisonment, and the Government does not argue that Defendant's 40-year sentence is not "unusually long,"[2] the determination of whether Defendant satisfies § 1B1.13(b)(6) turns on whether there has been a change in law that produced a "gross disparity" between the sentence Defendant is currently serving and the sentence he would likely receive today. Cruse, 2024 WL 3257142, at *3. If Defendant fails to establish a change in law or a gross disparity, his entire "unusually long sentence" claim will fail.

### 1. Change in Law

The first change in law cited by Defendant in support of his § 1B1.13(b)(6) claim is the Fair Sentencing Act of 2010. This law was enacted "in response to extensive criticism about the disparity in sentences between crack cocaine offenses and powder cocaine offenses." United States v. Black, 737 F.3d 280, 282 (4th Cir.

---

[2] Multiple district courts have held that sentences equal to or shorter than Defendant's 480-month sentence are "unusually long." See, e.g., United States v. Legrand, No. CR CCB-10-052, 2024 WL 2941282, at *6 (D. Md. June 11, 2024); United States v. Uriarte, 748 F. Supp. 3d 602, 606 (N.D. Ill. 2024).

2013). The Fair Sentencing Act reduced "the statutory minimum sentences for crack cocaine offenses by increasing the quantity of crack cocaine necessary to trigger the minimums," while leaving the quantities governing powder cocaine in place. Id. This change reduced "the sentencing disparity between crack cocaine and powder cocaine offenses," lowering the crack-to-powder ratio necessary to trigger statutory minimums from 100-to-1 to 18-to-1. Id. While this change in law greatly reduced the punishment for crack cocaine offenses, Congress chose to continue punishing crack offenses far more severely than powder cocaine offenses.

Because the Fair Sentencing Act did not apply its changes retroactively, glaring "disparities between sentences for crack cocaine offenses and powder cocaine offenses remained for defendants sentenced before August 2, 2010." United States v. Gravatt, 953 F.3d 258, 260 (4th Cir. 2020). To address this, Congress passed the First Step Act in 2018, the second change in law upon which Defendant relies, which made the Fair Sentencing Act retroactive for certain covered offenses.[3] Id.

---

[3] A covered offense is one whose penalty was modified by section 2 or 3 of the Fair Sentencing Act. First Step Act, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018). More specifically, covered offenses include crack cocaine crimes as punished under 21 U.S.C. § 841(b)(1), 21 U.S.C. § 960(b), and 21 U.S.C. § 844(a). Fair Sentencing Act, Pub. L. No. 111-220, §§ 2-3, 124 Stat. 2372, 2372 (2010). Notably missing from the list of covered offenses is 21 U.S.C. § 848, the statute that Defendant was convicted of violating. ECF No. 42.

To begin, Defendant states that the resolution of his case was impacted by this "100-to-1 crack/powder ratio" that was eliminated by the Fair Sentencing and First Step Acts. ECF No. 167, at 7. In other words, Defendant argues that these two Acts are changes in law that produced a gross disparity between the sentence he is currently serving and the sentence that would likely be imposed at the time his motion was filed. Id. While Defendant is correct that the First Step Act and Fair Sentencing Act are typically recognized as changes in law that can support a sentence reduction under § 1B1.13(b)(6), United States v. Cogdell, No. 3:16cr103-2, 2024 WL 5193616, at *12 (E.D. Va. Dec. 20, 2024), he is incorrect that these changes result in a gross disparity in his case.

## 2. Gross Disparity

Neither the Fair Sentencing Act nor the First Step Act produce a gross disparity between the sentence Defendant is currently serving and the one he would likely receive were he resentenced. In fact, if Defendant was resentenced under current law, he would be facing the exact same guideline range he was subjected to in 1999. ECF No. 166 ¶ 163.[4] As another judge of this Court noted when denying Defendant's prior motion for compassionate release, "[t]he drug weight attributed to . . . [D]efendant is so large

---

[4] Defendant's Sentencing Guidelines range in 1999 was 360 months to life imprisonment and Defendant was sentenced within this range to 480 months' imprisonment. ECF No. 166 ¶ 163.

9

that, despite the [post-sentencing] changes that have been made to the sentencing guidelines for cocaine offenses . . ., the applicable guidelines range has remained the same." United States v. Anderson, No. 2:98cr143, 2023 WL 3940117, at *6 n.11. (E.D. Va. June 9, 2023). When a defendant was previously sentenced to a term of imprisonment that falls within the same guideline range they would be subjected to today for the same conduct, "there is [typically] no gross disparity between him and similarly situated defendants to mitigate." United States v. Cohen, No. CR GLR-14-310, 2023 WL 8188386, at *4 (D. Md. Nov. 27, 2023), aff'd, No. 23-7294, 2024 WL 5166615 (4th Cir. Dec. 19, 2024); see also United States v. Guzman-Aviles, No. 24-3109, 2025 WL 615386, at *3 (10th Cir. Feb. 26, 2025) (holding that when a defendant was subject to the same sentencing guidelines range due to the quantity of drugs they possessed, the district court properly concluded that they were not entitled to relief under § 1B1.13(b)(6) because there was no "disparity" to correct).

This Court does not discount the reality that, due to changes in law, Defendant would have a stronger argument for a sentence somewhat shorter than 480 months if he were resentenced today. However, the duration of Defendant's involvement in the continuing criminal enterprise, the quantity of cocaine base involved, Defendant's violent behavior (including shootings), and his continuation of the conspiracy from jail would all still

counterbalance any request for leniency.  ECF No. 166 ¶¶ 10-12, 15, 19-27, 29-40, 42-46, 48-54, 61-62, 65-66, 71-74, 76-79, 81, 84-85.  Accordingly, even accepting the possibility of some degree of "disparity" in sentence notwithstanding the unchanged Guideline range, Defendant falls short of establishing a "gross" disparity between his current sentence and the sentence he would "likely" receive today.

*    *    *

Because Defendant fails to identify a change in law that produced a gross disparity, Defendant fails to demonstrate that extraordinary and compelling circumstances are present. Consequently, Defendant's claim predicated on U.S.S.G. § 1B1.13(b)(6) is **DENIED**.[5]

---

[5] Defendant briefly mentions United States v. Booker in his § 1B1.13(b)(6) argument.  ECF No. 167, at 7.  In Booker, the Supreme Court held that the Sentencing Guidelines are no longer mandatory and instead merely advisory. United States v. Booker, 543 U.S. 220, 246 (2005).  While this Court has previously recognized Booker as a change in law that can produce a gross disparity, see United States v. Crenshaw, No. 2:90cr117, 2025 WL 618869, at *5-6 (E.D. Va. Feb. 26, 2025), here, the Court is unconvinced that the mandatory nature of the Guidelines had any real impact on Defendant's sentence.  As discussed previously, Defendant's Guideline range was 360 months to life imprisonment.  ECF No. 166 ¶ 163.  The sentencing judge sentenced Defendant to 480 months, 120 months above the minimum Guideline range.  ECF No. 42.  Thus, because the sentencing judge elected to impose a substantially more severe punishment than the minimum authorized by the mandatory range, there is no basis to conclude that the mandatory nature of the Guidelines had any bearing on Defendant's sentence.

## B. "Other" Extraordinary and Compelling Circumstances: Guidance Promulgated by the Executive Branch

Factors other than those expressly listed in the Sentencing Guidelines can constitute an extraordinary and compelling reason for compassionate release. U.S.S.G. § 1B1.13(b)(5). To qualify under this catchall provision, the "other reasons" must, either by themselves or in combination with the circumstances enumerated in § 1B1.13(b)(1)-(4), be of a similar gravity as those already described as "extraordinary and compelling" in the Guideline policy statement. Id. Defendant argues that a Memorandum promulgated by former Attorney General ("AG") Merrick Garland,[6] and President Biden's January 2025 commutation of 2,500 prisoners' sentences are extraordinary and compelling "other reasons" that support his compassionate release.

### 1. Attorney General's Memorandum

In 2022, former AG Garland issued a memorandum providing an updated Department of Justice policy on charging, pleas, and sentencing in drug cases. Merrick Garland, Additional Department Policies Regarding Charging, Pleas, and Sentencing in Drug Cases (Dec. 16, 2022), https://perma.cc/XU7X-M7LQ ("Garland Memo").

---

[6] Defendant correctly concedes that the AG's memorandum is not a change in law that could support a sentence reduction under § 1B1.13(b)(6). ECF No. 167, at 10. The memo itself states that it is "guidance of attorneys for the government and may not be relied upon by a party to litigation with the United States." ECF No. 167-1, at 5 n.4. Accordingly, this Court addresses the memo as an "other reason" rather than a change in law under § 1B1.13(b)(6).

Defendant alleges that this memorandum makes clear that the Government's position is that there is "simply no basis for the continued unequal treatment of crack and cocaine powder." ECF No. 167, at 9-10. The Government, on the other hand, states that granting a reduced sentence based on this memo would create, rather than ameliorate, sentencing disparities. ECF No. 178, at 2. The memorandum outlines three updated policies relevant to Defendant's claim that this memorandum constitutes an extraordinary and compelling "other reason."

First, the memorandum discourages prosecutors from charging the drug quantity necessary to trigger a mandatory minimum sentence if a defendant satisfies four specific criteria. Garland Memo, at 1. One of these criteria is that a defendant's relevant conduct does not involve the use of violence or possession of a weapon. Id. Here, there is no question that Defendant committed multiple violent acts and possessed multiple firearms. See ECF No. 166 ¶¶ 29, 31, 42. Consequently, this portion of the memorandum does not establish that an extraordinary and compelling "other reason" was present.

Second, the memorandum discusses situations when it is appropriate for the prosecution to seek a downward departure or variance from the Guideline range. Garland Memo, at 3. Again, this portion of the memo acknowledging appropriate times to seek leniency is inapplicable to Defendant. Not only did Defendant

participate in a continuing criminal enterprise for over five years, stretching across multiple states, using violence to further his trafficking of crack and powder cocaine, but Defendant was also attributed with a large quantity of both of these drugs. ECF No. 166 ¶¶ 10-12, 15, 19-27, 29-40, 42-46, 48-54, 61-62, 65-66, 71-74, 76-79, 81, 84-85. As such, the Guideline range at Defendant's sentencing (which, as mentioned, would be the same today) accurately reflects the seriousness of Defendant's conduct and therefore cannot be the basis to support the finding of an extraordinary or compelling circumstance.

Third, AG Garland's memo specifically discusses charging, pleas, and sentencing in crack cocaine cases. Garland Memo, at 4-5. The memo states that prosecutors should attempt to promote the equivalent treatment of crack and powder cocaine offenses. Id. More specifically, it instructs prosecutors to charge "pertinent statutory quantities that apply to powder cocaine" in cases involving crack cocaine and to "advocate for a sentence consistent with powder cocaine rather than crack cocaine." Id. While the Court acknowledges that were Defendant to be sentenced under the one-to-one cocaine to crack ratio referenced in the memorandum, his Guideline range would likely be much lower, Defendant's "reliance on the Attorney General's guidance is overstated." United States v. Frezzell, No. CR 17-0208, 2024 WL 3328711, at *7 (W.D. Pa. July 8, 2024).

Critically, this ratio has not been codified in the criminal code, does not appear in the Sentencing Guidelines, nor in any other document that is binding on or assists the Court with sentencing decisions. Rather, the memo explicitly states that "it is intended solely for guidance of attorneys for the government." Garland Memo, at 5. "Thus, the [Garland] Memorandum has no binding effect on the judiciary," United States v. Foster, No. 21cr30137, 2024 WL 1483986, at *2 (S.D. Ill. Apr. 5, 2024), and need not be followed by the courts, United States v. Delvalle, No. 16 CRIM. 174, 2025 WL 81308, at *3 (S.D.N.Y. Jan. 13, 2025).

Additionally, non-binding, non-retroactive guidance intended for prosecutors, essentially suggesting they exercise their prosecutorial discretion to recommend a ratio that conflicts with the drug trafficking statute, is not, in this Court's mind, of a similar gravity as those circumstances enumerated in § 1B1.13(b)(1)-(4). Moreover, Defendant's circumstances "do not rise to the level of a truly grave condition," Frezzell, 2024 WL 3328711, at *6, and are not similar in gravity to conditions "such as a terminal medical condition, dire family emergency, or abuse at the hands of a custodian," United States v. Carter, 711 F. Supp. 3d 428, at 441 (E.D. Pa. 2024). In fact, a contrary finding "would be inconsistent with the language of the compassionate-release statute." United States v. Washington, 122 F.4th 264, 267 (6th Cir. 2024). As both the Sixth and Seventh Circuits have noted,

"there is nothing 'extraordinary' about leaving untouched the []
penalties that Congress prescribed" for the violation of a statute,
id. (quoting United States v. Thacker, 4 F.4th 569, 574 (7th Cir.
2021)), and "what is routine — a criminal defendant [] serving the
duration of a lawfully imposed sentence — is not compelling,"
Washington, 122 F.4th at 267 (quoting United States v. McCall, 56
F.4th 1048, 1056 (6th Cir. 2022)); see also United States v. Elder,
No. 17-CR-05-A, 2025 WL 480232 (W.D.N.Y. Feb. 13, 2025)(denying
motion for sentence reduction based on the Garland Memo and the
historical treatment of crack versus powder cocaine).
Accordingly, this Court rejects Defendant's assertion that this
memorandum supports the finding of an extraordinary and compelling
"other reason" for a sentence reduction.[7]

### 2. President Biden's Commutation of Sentences

Similarly, Defendant relies on President Biden's commutation
of nearly 2,500 federal prisoners' sentences who were convicted of
drug offenses and were "serving disproportionately long sentences
compared to the sentences they would receive today under current
law, policy, and practice" as an "other reason" supporting his
compassionate release.  The White House, Statement from President

---

[7] Defendant also relies on the DOJ's testimony before the Senate Judiciary
Committee that is referenced in the AG's memo.  ECF No. 167, at 9-10.  As
with AG Garland's memorandum, this testimony neither constitutes a relevant
change in law under § 1B1.13(b)(6), nor a sufficiently ordinary and
compelling "other reason" to support a sentence reduction, especially
because the internal memo has been rescinded and a defendant sentenced today
would not likely benefit from a one-to-one ratio.

_Joe Biden on Additional Clemency Actions_ (Jan. 17, 2025),
https://perma.cc/X2UN-68TH. As Defendant highlights, President
Biden stated that he was providing relief for "individuals who
received lengthy sentences based on discredited distinctions
between crack and powder cocaine." Id. What Defendant fails to
mention, however, is that these commutations were granted to non-
violent drug offenders. Id. Non-violent is something Defendant
was not. As reflected in the record, Defendant was "known to
always carry a firearm," ECF No. 166 ¶ 49, which he frequently
used to threaten and even shoot at, rival drug dealers, id. ¶¶ 29,
31, 42. Therefore, it is likely that President Biden purposefully
chose not to commute Defendant's sentence. In this circumstance,
the judiciary has "no authority to fill the gap" that is left when
the President does not issue a commutation of a defendant's
sentence. Rosemond v. Hudgins, 92 F.4th 518, 530 (4th Cir. 2024).
Moreover, as the Government aptly states, "[a] commutation a
prisoner did not receive, because his circumstances differ from
those who did" is neither a change in law under § 1B1.13(b)(6),
nor an "other reason" of similar gravity to those reasons in §
1B1.13(b)(1)-(4). ECF No. 178, at 4.

\*    \*    \*

Consequently, Defendant fails to demonstrate that the impact
of AG Garland's Memorandum or President Biden's commutation of
non-violent defendants' sentences carries the same gravity as the

other circumstances enumerated in U.S.S.G. § 1B1.13(b)(1)-(4). Defendant's motion for compassionate release based on these "other reasons" is therefore **DENIED**.

### C. Effects of COVID-19 Pandemic on Prison Conditions

As outlined above, factors other than those expressly listed in the Guidelines Policy Statement can constitute an extraordinary and compelling reason for compassionate release, so long as they are, by themselves or in combination, of a similar gravity as those already described as "extraordinary and compelling." U.S.S.G. § 1B1.13(b)(5). Defendant argues that his "past four years in the BOP have been difficult and very scary" because of the COVID-19 pandemic, and since his sentence has been more punitive than originally anticipated, he is entitled to a sentence reduction. ECF No. 167, at 16.

Contrary to Defendant's assertion, harsh prison conditions and increased restrictions resulting from the COVID-19 pandemic "alone do not create an extraordinary and compelling reason for release." Lingenfelter v. United States, No. 2:10cr153, 2024 WL 4520122, at *5 (E.D. Va. Oct. 17, 2024). Unfortunately, every inmate had to deal with these harsh conditions in response to COVID-19. Id. Such widespread "conditions that 'generally apply to every prisoner within a given facility and are neither unique [] nor extraordinary in the broader context of the global pandemic' do not warrant compassionate release." Id. (quoting United States

18

v. Fuentes, No. 1:19cr109, 2022 WL 3581392, at *7 (E.D. Va. Aug. 19, 2022)). Rather, a defendant must proffer a confluence of circumstances unique to themselves, that are "extraordinary in the broader context of the global pandemic," in order for the harsh prison conditions resulting from COVID-19 to satisfy the U.S.S.G. § 1B1.13(b)(5) requirements. United States v. Laporte, No. 4:19cr8, 2024 WL 4800192, at *3 (E.D. Va. Nov. 15, 2024) (citing Fuentes, No. 1:19cr109, 2022 WL 3581392, at *7 (E.D. Va. Aug. 19, 2022)). Here, the "unique" confluence of circumstances Defendant discusses are: (1) that he spent the entirety of the pandemic incarcerated; (2) was subjected to lockdowns and restricted prison programming; and (3) he was subject to "other harsh and dangerous conditions." ECF No. 167, at 16-17.

To begin, Defendant was certainly not the only individual who was incarcerated throughout the entirety of the pandemic. In fact, there are multiple other incarcerated individuals who have recently made this exact same argument in their own motions for compassionate release. See United States v. Harris, No. CR 18-0629, 2025 WL 267048, at *2, *4 (D.N.J. Jan. 21, 2025); United States v. Enamorado, No. CR 15-10338-FDS-20, 2025 WL 992024, at *2 (D. Mass. Apr. 2, 2025); United States v. Pizarro, No. CR 18-10371, 2025 WL 990566, at *2 (D. Mass. Apr. 1, 2025). Since there are so many others similarly situated to Defendant, his incarceration throughout the past five years is not sufficiently

unique as to constitute an extraordinary and compelling "other reason" for sentence reduction.

Second, during the COVID-19 pandemic, restrictive conditions were put into place in Bureau of Prisons ("BOP") facilities across the country to protect prisoners, not punish them. See United States v. Trapp, No. 1:18cr541, 2023 WL 2978941, at *3 (N.D.W. Va. Apr. 17, 2023) (recognizing that the BOP's operating procedures during COVID were put into place to lower prisoners' risks of exposure to COVID-19, and therefore, the BOP's "informed efforts to curtail the spread of COVID within its facilities in order to protect [] inmates" does not constitute an extraordinary or compelling circumstance to reduce a sentence). These protective actions often included canceling prison programming and limiting interactions between prisoners by confining them to their assigned cells for most of the day. This Court finds that although these conditions were unquestionably difficult and created daily challenges, increased isolation and lack of programming during COVID was also not unique to Defendant's incarceration. United States v. Garcia, No. 1:01cr52, 2024 WL 1722190, at *2 (W.D.N.C. Apr. 22, 2024); see also United States v. Johnson, No. CR RDB-18-0178, 2024 WL 2956095, at *4 (D. Md. June 12, 2024) (rejecting a claim that undue hardship resulted from increased restrictions on prison event programming); United States v. Williams, No. 4:09cr39, 2025 WL 1284882, at *7 (W.D. Va. May 2, 2025) (agreeing

20

that limited educational and rehabilitative programming does not establish extraordinary and compelling reasons for compassionate release).[8]

At bottom, Defendant's broad allegations regarding prison conditions fail to demonstrate that his case-specific circumstances carry the same gravity as those enumerated in U.S.S.G. § 1B1.13(b)(1)-(4). Since Defendant does not proffer a confluence of circumstances unique to his case, he fails to demonstrate that "other" extraordinary and compelling circumstances exist to support a reduction of his sentence. Laporte, 2024 WL 4800192, at *3. For that reason, Defendant's motion for compassionate release based on COVID-19's effects on his incarceration is **DENIED**.

### D. Defendant's Post-Sentencing Rehabilitation

Defendant's final argument highlights his rehabilitation. Defendant reasons that he has held a job throughout his incarceration, completed drug education and treatment programs, received his GED, completed an "Evidence-Based Recidivism Reduction" program, has only minor disciplinary infractions while incarcerated, and has a strong relationship with his family. ECF No. 167, at 18. Defendant states that this evidences significant

---

[8] Defendant's last argument alleges that he faced "other harsh and dangerous conditions." ECF No. 167, at 17. However, Defendant does not elaborate on the specifics of these alleged harsh and dangerous conditions, and therefore, this undeveloped conclusory claim fails. Garcia, 2024 WL 1722190, at *2.

21

rehabilitation and, in combination with all of his other arguments, warrants a sentence reduction.  Id.

To be sure, the Court commends Defendant's consistent BOP employment and completion of educational courses and other programming during his long period of incarceration.  However, pursuant to § 1B1.13(d), rehabilitation, by itself is not an extraordinary and compelling reason supporting release.  And to the extent that Defendant asks this Court to consider his rehabilitative efforts in conjunction with his prior arguments, the Court finds that Defendant's record while incarcerated does not materially improve his other failing claims in support of an extraordinary and compelling finding.  Because Defendant fails to establish any of the extraordinary and compelling circumstances outlined in § 1B1.13(b)(1)-(6), relief based on Defendant's rehabilitation is **DENIED**.  See Williams, 2025 WL 1284882, at *8.[9]

### E. Section 3553 Factors

A sentence reduction is appropriate under § 3582(c)(1)(A) only if a defendant both establishes an extraordinary and compelling circumstance and demonstrates that the § 3553(a) statutory sentencing factors support such a sentence reduction.

---

[9] To the extent all of Defendant's arguments in Sections III(A)-(D) are collectively considered and evaluated under the § 1B1.13(b)(5) standard, they still do not rise to the level of extraordinary and compelling circumstances.

22

Here, because Defendant's motion fails at the threshold step, the Court need not address the § 3553(a) factors.[10]

## IV. CONCLUSION

For the reasons explained above, Defendant's motion for compassionate release is **DENIED**.  ECF No. 167.  The Clerk is **REQUESTED** to forward a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
June  10 , 2025

---

[10] Defendant asks the Court to consider the 2024 amendment to U.S.S.G. § 5H1.1, which discusses the impact of age on involvement in the criminal justice system and recidivism, when weighing the sentencing factors in his case. ECF No. 176, at 5. However, due to Defendant's failure to present an extraordinary and compelling circumstance, this Court does not squarely address the sentencing factors, or Defendant's arguments relating to the amendment of § 5H1.1. The Court does note that § 5H1.1 is not an applicable change in law that could have been assessed under Defendant's § 1B1.13(b)(6) claim.  See U.S.S.G. § 1B1.13(c) (stating that an amendment to the Guidelines Manual that has not been made retroactive "shall not be considered for the purposes of determining whether an extraordinary and compelling reason exists under this policy statement").

23